```
                  UNITED STATES DISTRICT COURT
                  EASTERN DISTRICT OF MISSOURI
                        EASTERN DIVISION
```

| | |
|---|---|
| LARRY L. HOPKINS, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| v. ) | No. 4:03 CV 1845 DJS |
| ) | DDN |
| CHUCK DWYER, ) | |
| ) | |
| Respondent. ) | |

**REPORT AND RECOMMENDATION**
<u>**OF UNITED STATES MAGISTRATE JUDGE**</u>

This action is before the court upon the petition of Missouri state prisoner Larry L. Hopkins for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. The matter was referred to the undersigned United States Magistrate Judge for review and a recommended disposition in accordance with 28 U.S.C. § 636(b).

**BACKGROUND**

On August 20, 1997, in the Circuit Court of the City of St. Louis, petitioner Hopkins was found guilty by a jury of one count of murder in the first degree and one count of armed criminal action.[1] (Doc. 9 Ex. 2 at 6.) On September 26, 1997, he was sentenced to consecutive terms of life imprisonment without the possibility of parole and life imprisonment in the Missouri Department of Corrections, respectively. (<u>Id.</u>)

On October 1, 1997, petitioner appealed to the Missouri Court of Appeals. (<u>Id.</u>) He argued that the trial court abused its discretion in refusing to grant a mistrial because the prosecutor failed to timely disclose statements made by petitioner to state's witness Amos Perryman. (<u>Id.</u> Ex. 4 at 13-24.) In addition, he argued that the trial court erred in allowing the deputy chief medical examiner, Dr. Phillip Burch, to testify about the findings made in the autopsy report of the chief

---

[1] An earlier jury trial on these charges resulted in a hung jury mistrial.

medical examiner, Dr. Michael Graham, because the state failed to establish that Dr. Graham was qualified as an expert in his field. (Id. at 25-29.) The Missouri Court of Appeals summarily affirmed the judgment of the circuit court and issued its mandate on December 3, 1998. (Id. Exs. 6, 8 at 4.)

On March 1, 1999, petitioner moved for post-conviction relief under Missouri Supreme Court Rule 29.15. (Id. Exs. 8 at 1, 36.) In his Rule 29.15 motion, he alleged five grounds of ineffective assistance of counsel and one ground of ineffective assistance of appellate counsel. (Id. at 39-48.) On August 28, 2001, the circuit court denied the motion after an evidentiary hearing. (Id. at 52-58.)

On October 9, 2001, petitioner appealed the denial of his Rule 29.15 motion to the Missouri Court of Appeals. (Id. at 63-64.) The denial of post-conviction relief was affirmed summarily; the appellate court issued its mandate on November 27, 2002. (Id. Exs. 11, 12.) Petitioner filed a motion to transfer in the Missouri Supreme Court on December 12, 2002, and that application was denied on January 28, 2003. (Id. Exs. 12, 13.)

On December 23, 2003,[2] petitioner Hopkins filed his petition for a writ of federal habeas corpus in this court. He alleges eight grounds for relief:

(1) the trial court erred by refusing to grant a mistrial because the prosecutor failed to timely disclose petitioner's statement to state's witness Amos Perryman that the victim had stolen his marijuana;

(2) the trial court erred in allowing Dr. Phillip Burch to testify about the findings made in Dr. Michael Graham's autopsy report, because the state failed to establish that Dr. Graham was qualified as an expert in his field;

(3) the circuit court erred in denying the first point in his post-conviction motion, because he proved by a preponderance of the evidence that his trial counsel

---

[2] The filing date was the date petitioner deposited his petition in the prison mail system. Nichols v. Bowersox, 172 F.3d 1068, 1074, 1077 (8th Cir. 1999) (en banc). The record reflects that petitioner's petition was postmarked December 23, 2003. (Doc. 1, Attach. copy of mailing envelope.)

rendered ineffective assistance of counsel by not pursuing an alibi defense through petitioner's testimony and the testimony of Martha Walker, his mother;

(4) the circuit court erred in denying the second point in his post-conviction motion, because he proved by a preponderance of the evidence that his trial counsel rendered ineffective assistance of counsel by failing to make a <u>Batson v. Kentucky</u>[3] challenge to the state's peremptory strike of African American venire panelist No. 550;

(5) trial counsel rendered ineffective assistance of counsel for failure to object as irrelevant and inadmissible his conversation with witness Amos Perryman that reflected petitioner's propensity to commit other crimes;

(6) direct appeal counsel rendered ineffective assistance of counsel for failure to raise on appeal that the trial court wrongly overruled his motion to suppress his confession;

(7) trial counsel rendered ineffective assistance of counsel for failure to investigate, endorse, or subpoena as a witness Shari Clark, named by petitioner, who may have assisted in the defense;[4] and

(8) trial counsel rendered ineffective assistance of counsel for not questioning state's witness Norman Hopkins, petitioner's father, about a letter he wrote that stated that he did not know whether petitioner was guilty.

(Doc. 1 at 1-23.)

## STATUTE OF LIMITATIONS

Respondent argues that petitioner's federal habeas corpus petition must be dismissed, because it was not filed within the one-year limitations period prescribed by 28 U.S.C. § 2244(d)(1) ("A 1-year period of limitations shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State

---

[3] 476 U.S. 79 (1986).

[4] Petitioner alleges that Ms. Clark's testimony in his first trial established a reasonable doubt as to his guilt which resulted in the hung jury.

court"). The statute also provides that the one-year period does not include the time during which an application for state collateral review is "pending" in the state courts. 28 U.S.C. § 2244(d)(2). "[A]n application is pending as long as the *ordinary* state collateral review process is 'in continuance . . . .'" Carey v. Saffold, 536 U.S. 214, 219-20 (2002) (emphasis added).

On November 27, 2002, the Missouri Court of Appeals issued its mandate denying petitioner's motion for rehearing and petitioner did not file his federal habeas corpus petition until December 23, 2003. Respondent argues that the period from December 12, 2002, when petitioner applied for transfer to the Missouri Supreme Court, until January 28, 2003, when the court denied the application, should not toll the limitations period. The undersigned agrees.

Since an application is only pending during the course of an *ordinary* process of review, whether or not a state supreme court classifies a transfer to that court as ordinary or extraordinary is relevant to applying the one-year statute of limitations. Carey, 536 U.S. at 221; Wright v. Norris, 299 F.3d 926, 928 n.3 (8th Cir. 2002). In October 2001, the Missouri Supreme Court amended Rule 83.04, effective July 2002, to provide that transfer to it from a court of appeals after the court of appeals issued its decision is an extraordinary remedy and not part of the ordinary review process. Mo. S. Ct. R. 83.04; Randolph v. Kemna, 276 F.3d 401, 404 (8th Cir. 2002) ("[T]he amendment to the Rule 83.04 constitutes an unequivocal statement about where Missouri's 'one complete round of the state's established appellate review process' stops . . . ."). Because the amendment to Missouri Supreme Court Rule 83.04, which was in effect when petitioner applied for transfer to that court, classifies such transfer as an extraordinary remedy, the time spent pursuing that remedy should be included in the limitations period.

Therefore, the instant petition for federal habeas relief should be dismissed, because it was not timely filed during the one-year limitations period of 28 U.S.C. § 2244(d)(1).

The undersigned has also determined that petitioner's grounds 1, 2, 3, and 4 are without merit and that grounds 5, 6, 7, and 8 are

procedurally barred from federal habeas review.

### EXHAUSTION OF STATE REMEDIES AND PROCEDURAL BAR

In order for a state prisoner to obtain federal court consideration under § 2254, he must have fully exhausted all remedies available in the state courts for each ground he intends to present in federal court. 28 U.S.C. § 2254(b); Coleman v. Thompson, 501 U.S. 722, 731 (1991); Sloan v. Delo, 54 F.3d 1371, 1381 (8th Cir. 1995), cert. denied, 516 U.S. 1056 (1996). State prisoners must give the state courts one full opportunity to resolve any federal constitutional issues by invoking one complete round of the state's established appellate review process in order to proceed on a federal habeas corpus claim. O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999). A failure to raise a claim in the state courts erects a procedural bar to relief in federal court. Sweet v. Delo, 125 F.3d 1144, 1149-51 (8th Cir. 1997), cert. denied, 523 U.S. 1010 (1998). Petitioner may avoid the procedural bar to federal habeas review by demonstrating legally sufficient cause for the default and actual prejudice resulting from it. Coleman, 501 U.S. at 750. To establish cause for a procedural default, petitioner must demonstrate that some objective factor external to the defense impeded his efforts to comply with state procedural requirements. Coleman, 501 U.S. at 750-52. The doctrine applies whether the procedural default occurred at trial, on appeal, or on state collateral attack. See Murray v Carrier, 477 U.S. 478, 490-92 (1986).

Petitioner may also obtain federal habeas review by showing that failure to review his grounds for relief would result in a fundamental miscarriage of justice. Sloan, 54 F.3d at 1378. A fundamental miscarriage of justice would occur, if petitioner was actually innocent. Murray, 477 U.S. at 495-96. A habeas petitioner asserting actual innocence to support his allegations of constitutional error must do so with new, reliable evidence. Schlup v. Delo, 513 U.S. 298, 324 (1995).

Respondent does not gainsay that petitioner has exhausted all available state remedies for his alleged federal habeas grounds, because there is now no available, non-futile state remedy for petitioner to pursue. Coleman, 501 U.S. at 731; Sloan, 54 F.3d at 1381.

## STANDARD OF REVIEW

This court's review of a state court decision is limited to situations when adjudication of the claim:

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1)-(2). "A state court's decision is contrary to clearly established law 'if the controlling case law requires a different outcome either because of factual similarity to the state case or because general federal rules require a particular result in a particular case.'" Tokar v. Bowersox, 198 F.3d 1039, 1045 (8th Cir. 1999) (quoting Richardson v. Bowersox, 188 F.3d 973, 977-78 (8th Cir. 1999)). The issue a federal habeas court faces when deciding whether a state court unreasonably applied federal law is "whether the state court's application of clearly established federal law was objectively unreasonable." Williams v. Taylor, 529 U.S. 362, 365 (2000) (plurality opinion).

## GROUND 1

Petitioner alleges in Ground 1 that the trial court wrongly refused to grant a mistrial, because the prosecutor failed to timely disclose his statement to state's witness Amos Perryman that the victim had stolen marijuana from him.

Perryman was an eyewitness to the shooting. (Doc. 9, Ex. 1 at 110-111.) He testified that petitioner and the victim, petitioner's brother, argued about money right before the shooting (Tr. 104-105), and that petitioner told him, "I'm gonna hit this nigger." (Id. at 106-107.)

On cross-examination, defense counsel questioned Perryman:

Q. (By defense Counsel): Okay. Now you also said in that audiotaped statement when you talked to the police that Junior was pretty heavy into crack at the time?

> A. I said they said that. I don't know. That's what they say, people in the neighborhood.
>
> * * *
>
> Q. Okay. So you're telling me that you did not say the words, "June was on drugs on crack real bad, he was like stealing his mother's jewelry and stealing money from his brothers and sister?"
>
> A. I didn't say he stole his mother's jewelry.
>
> Q. You did not say those statements?
>
> A. No, I didn't say he stole his mother's jewelry.
>
> Q. Did you say the other parts of that statement?
>
> A. I said Larry said he stole from him.
>
> Q. But this quote you're telling me you did not say? You're denying that?
>
> A. I didn't say he stole his mother's jewelry. I don't know even know if he stole his mother's jewelry.
>
> MS. RUESS (defense Counsel): Okay. Judge, at this time I'd like a chance to set up the tape to impeach the witness.

(Id. at 130-31.)

> (The following portions of the tape were played).
>
> Question, "Have June and Larry ever had a dispute before? " Answer, "Yes." Question, "Was it concerning the same type incident?"
>
> * * *
>
> Answer: "Yeah, June was like in crack real bad and he was like stealing his mother's jewelry and stealing money from his brothers and sisters. And they had just put him out there that day."

(Id. at 134.)

On re-direct examination, the prosecuting attorney returned to the subject of problems between petitioner and his brother:

> Q: (By the prosecuting attorney): Did you have personal knowledge that there was a dispute between Larry and

>     June from his own statement?
>
>             *   *   *
>
> A:   One day I was over at the house with Larry. Me and him were just at the house watching movies and talking. And-
>
> MS. RUESS:  When is this?
>
> THE WITNESS: I was over my mother house.  My mother let Larry stay there.  Me and Larry was there.
>
> MS. RUESS:  When?
>
> THE WITNESS: Earlier that week.
>
> MS. RUESS: Okay, I just couldn't hear you. I'm sorry, go ahead.
>
> A:   *And Larry said June had stole some marijuana from him and -*

(Id. at 142-43) (emphasis added).

At this point, defense counsel requested a mistrial, arguing that the witness's answer constituted inadmissible evidence of a prior crime and that it contained an oral statement by petitioner that had not been disclosed to the defense. (Id. at 143.) The trial court overruled the motion for a mistrial. (Id. at 144.) Petitioner maintains that the state failed to disclose his statement that his brother had stolen marijuana from him, in violation of his rights under Due Process Clause of the Fourteenth Amendment.

For a Due Process Clause violation to occur there has to be an evidentiary impropriety which was so egregious as to render the whole trial fundamentally unfair. See Stringer v. Hedgepeth, 280 F.3d 826, 829 (8th Cir. 2002); Anderson v. Goeke, 44 F.3d 675, 678-680 (8th Cir. 1995). In this case, there was no such impropriety in the denial of the mistrial of which petitioner complains. The redirect examination of the witness by the prosecutor, which elicited the information about the victim having stolen marijuana from petitioner shortly before the killing, was a response to the cross-examination by defense counsel about a dispute between petitioner and the victim. The witness's answer was within the scope of the cross-examination and did not deprive

petitioner of a fair trial.

Ground 1 is without merit.

## GROUND 2

Petitioner's second ground alleges that the trial court erred in allowing Dr. Phillip Burch to testify about the findings made in Dr. Michael Graham's autopsy report, because the state failed to establish that Dr. Graham, the chief medical examiner, was qualified as an expert in his field.

"In any civil action, if scientific, technical or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify thereto . . . ." Mo. Rev. Stat. § 490.065. State v. Love, 963 S.W.2d 236, 241 (Mo. App. 1997) ("The test of whether a witness is qualified as an expert is whether the witness has knowledge or skill from education or experience that will aid the trier of fact."). Generally, "the admissibility of evidence in a state court proceeding is a matter of state law and usually does not form the basis for habeas corpus relief. Owsley v. Bowersox, 48 F. Supp. 2d 1195, 1210 (W.D. Mo. 1999).

Petitioner's rights to due process of law and a fair trial have not been denied. At trial, Dr. Burch identified Dr. Graham as the chief medical examiner and that the two of them are the two principal physicians with primary responsibility for examining suspicious deaths. (Tr. at 159.) Then, Dr. Burch described the usual course of an autopsy of a shooting victim and testified that reports are usually generated by the examining pathologist. (Id. at 160-62.) When the prosecutor offered Dr. Graham's report into evidence, petitioner's counsel did not object to the foundation laid for Dr. Graham's findings. (Id. at 164); cf. Weddell v. Weber, 290 F. Supp. 2d 1011, 1019 (D.S.D. 2003) (finding counsel was not ineffective for failing to object to expert's testimony on evidentiary grounds and noting petitioner failed to introduce evidence on appeal that the expert's opinion "was scientifically unreliable or lacking in foundation"). The findings that the victim died of gunshot wounds to the head were not contested on cross-examination. Once again, the trial court did not deprive petitioner of a fair trial by allowing the subject testimony.

For these reasons, Ground 2 is without merit.

**GROUND 3**

Petitioner alleges in his third ground that he received ineffective assistance of counsel when defense counsel prevented him from pursuing an alibi defense by not calling him and Martha Walker, his mother, to testify.

To demonstrate ineffective assistance of counsel, petitioner must first demonstrate that counsel's performance fell below an objective standard of reasonableness. Strickland v. Washington, 466 U.S. 668, 687-88 (1987). In this regard, petitioner must overcome a strong presumption that counsel has rendered constitutionally effective assistance. Id. at 690; Blackmon v. White, 825 F.2d 1263, 1265 (8th Cir. 1987). Counsel's strategic choices made after thorough investigation are virtually unchallengeable, and decisions following less thorough, but nevertheless reasonable, investigation are to be upheld to the extent that they are supported by reasonable judgment. Strickland, 466 U.S. at 690-91.

The second element of the Strickland test requires that a habeas petitioner demonstrate prejudice resulting from counsel's dereliction of duty. Id. at 687. The test for prejudice requires that petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id.

In order to establish that petitioner has been denied his Sixth Amendment right to counsel, it is necessary that *both* the "performance" and "prejudice" components of the Strickland analysis is established affirmatively by the petitioner. "Unless a defendant makes both showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable." Id. at 687. Strickland did not "establish mechanical rules; "the ultimate focus of inquiry must be on the fundamental fairness of the proceedings whose result is being challenged." Id. at 670.

Petitioner testified at his post-conviction relief hearing that the judge advised him of his right to testify in his own defense; that, in spite of his prior convictions and the fact that his father testified for the state at trial that petitioner told him he had shot the victim,

that he wanted to testify to an alibi defense; that he informed his counsel that he wanted to testify and that he never agreed otherwise; and that she nevertheless did not call him as a witness. (Doc. 9, Ex. 7 at 10-19.)

Petitioner's trial defense counsel testified differently at the post-conviction hearing. She testified that witness Walker's testimony would have been more harmful to petitioner than helpful, because her testimony would have put him near the scene of the shooting. (Id. at 58.) Counsel testified she dissuaded petitioner from testifying because his story kept changing. (Id. at 62.) The record establishes that it was reasonable for counsel to believe that her testimony would not have been helpful to the defense. (Doc. 9, Ex. 8 at 37, 44.) Ms. Walker did not witness the shooting; neither could she provide an alibi, since she did not know where petitioner was before the shooting. In addition, counsel did not want the jury to hear Ms. Walker testify that petitioner was "upset and nervous" while talking to her on the phone. (Id. at 53, 58.)

The post-conviction motion hearing court credited the testimony of petitioner's defense counsel and determined that petitioner and his attorney made a mutual decision that he would not testify at the trial. (Id. Ex. 8 at 54.) The record supports the state courts' findings and conclusions that counsel's decision not to call petitioner as a defense witness was a matter of legitimate trial strategy that was not ineffective assistance of counsel.

The Constitution does not require trial counsel to call every available witness. United States v. Balzano, 916 F.2d 1273, 1294 (7th Cir. 1990). Petitioner's trial counsel's decision not to call him and Ms. Walker as witnesses was a matter of reasonable trial strategy. Counsel did not render ineffective assistance of counsel in this respect.

Ground 3 is without merit.

## GROUND 4

Petitioner alleges that the circuit court erred in denying post-conviction relief, because he proved that his trial counsel rendered ineffective assistance of counsel for failure to challenge the state's peremptory strike of an African-American venire panelist.

Under Batson v. Kentucky, 476 U.S. 79 (1986), a party in a judicial action violates the equal protection rights of an opponent by using a race-based reason for striking jurors from the venire panel. Unless the objecting party shows direct evidence of such racial animus, the party may establish entitlement to relief by proving the elements of a prima facie case of racial discrimination: (1) the party is a member of a cognizable racial group; (2) that his or another cognizable group's members have been excluded from the jury; and (3) circumstances of the case raise an inference that the exclusion was based on race. Id. at 96; Powers v. Ohio, 499 U.S. 400, 415 (1991).

The record of the jury selection does not indicate how many African-Americans were in the jury pool, nor does it indicate how many African-Americans were stricken by the prosecutor. Cf. United States v. Dawn, 897 F.2d. 1444, 1448 (8th Cir. 1990) (defendant is obligated to develop a record beyond sheer number of minority venire persons in support of the asserted violation). During the evidentiary hearing, petitioner's counsel testified that she did not make a Batson challenge when the state struck the subject venire person, because she thought such a challenge was unwarranted, and because she was otherwise happy with the make-up of the jury. Moreover, this juror was not a person she would have picked. (Id. at 54.) Therefore, the record does not support petitioner's allegation that counsel's decision not to make the Batson challenge was ineffective assistance of counsel.

Ground 4 is therefor without merit.

## GROUNDS 5, 6, 7, and 8

Grounds 5, 6, 7, and 8 were not presented to the Missouri Court of Appeals on the appeal of the denial of post-conviction relief and are therefore procedurally barred. See 28 U.S.C. § 2254(b); Coleman, 501 U.S. at 731; Sloan, 54 F.3d at 1381. Further, petitioner has not shown

legally sufficient cause and prejudice for his failure to present these grounds on appeal.  Coleman, 501 U.S. at 750-52.  And he has not proffered new and reliable evidence that he did not commit the crimes for which he was convicted.  Therefore, the failure of the court to consider these grounds will not result in a miscarriage of justice.  Schlup, 513 U.S. at 316, 324.

For these reasons, Grounds 5,6,7 and 8 are procedurally barred from review by this court.

### RECOMMENDATION

Because the instant petition was not filed within the prescribed limitations period and, in the alternative, because Grounds 1-4 are without merit and Grounds 5-8 are procedurally barred, it is the recommendation of the undersigned United States Magistrate Judge that the petition of Larry L. Hopkins for a writ of habeas corpus be denied.

The parties have ten (10) days in which to file written objections to this Report and Recommendation.  The failure to file timely, written objections will waive the right to appeal issues of fact.

_____
**DAVID D. NOCE**
**UNITED STATES MAGISTRATE JUDGE**

Signed on July 12, 2005.